# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

### VENUE: SAN JOSE

**FILED**

SEP - 8 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

## CR 09     0895



DAVID ARTHUR NILSEN, and
MANOEL ANTONIO ERRICO,

**JW**

**PVT**

DEFENDANT(S).

---

## INDICTMENT

Count One:  18 U.S.C. § 1349 (Conspiracy);
Counts Two - Twelve:  18 U.S.C. § 1341 (Mail Fraud);
Counts Thirteen - Twenty:  18 U.S.C. § 1343 (Wire Fraud);
Counts Twenty-One - Thirty-One:  15 U.S.C. §§ 78j(b) and 78ff, 17
C.F.R. §§ 240.10b-5 and 240.10b5-2 (Securities Fraud),
18 U.S.C. § 2 (Aiding and Abetting)

---

A true bill.

_____
                          Foreman

Filed in open court this __8th__ day of

__September 2009__.

__Karen L. Hom__ Clerk

JOSEPH C. SPERO   KAREN L. HOM
UNITED STATES MAGISTRATE JUDGE

Bail, $ __no bail arrest warrant__

DOCUMENT NO.     CSA's
                 INITIALS

**1**

DISTRICT COURT
CRIMINAL CASE PROCESSING

1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2

3

4                                                    

5

6                        

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION                    

11

12  UNITED STATES OF AMERICA,          )   No.
                                       )   CR09              0895
        Plaintiff,                     )   VIOLATIONS:
13                                     )
                                       )   18 U.S.C. § 1349 (Conspiracy);
14      v.                             )   18 U.S.C. § 1341 (Mail Fraud);
                                       )   18 U.S.C. § 1343 (Wire Fraud);
15                                     )   15 U.S.C. §§ 78j(b) and 78ff,
    DAVID ARTHUR NILSEN,               )   17 C.F.R. §§ 240.10b-5 and 240.10b5-2,
16  MANOEL ANTONIO ERRICO,             )   18 U.S.C. § 2 (Securities Fraud); and
                                       )   18 U.S.C. § 981(a)(1)(C),
17      Defendants.                    )   28 U.S.C. § 2461(c) (Forfeiture)
                                       )
18                                     )
    _____)   SAN JOSE VENUE
19

20

21                       **I N D I C T M E N T**

        The Grand Jury charges that, at all relevant times:
22
                       Relevant Entities and Individuals
23
        1.      DAVID ARTHUR NILSEN ("NILSEN") was a resident of Monterey, California,
24
    and worked as a licensed real estate broker in the real estate development and investment
25
    profession.
26
        2.      CEDAR FUNDING, INC. ("CFI") was a California corporation located in
27

28

    **INDICTMENT**

1   Monterey and owned and controlled by NILSEN, who was its president.  Prior to incorporating
2   CFI, NILSEN operated as a sole proprietorship known as David Nilsen, dba Cedar Funding.
3   This Indictment refers to both entities as "CFI."  CFI was a "hard money lender" which purported
4   to engage in the business of originating and servicing loans made by private investors to
5   borrowers, primarily for residential construction and development projects.
6       3.      CEDAR FUNDING MORTGAGE FUND, LLC (the "Fund" or "CFMF") was a
7   California limited liability company whose sole manager was CFI.  NILSEN organized the Fund
8   for the stated purpose of offering securities (known as "units") to investors and using the
9   proceeds from the offering to invest in secured loans originated and serviced by CFI.
10      4.      MANOEL ANTONIO ERRICO ("ERRICO") was a resident of Monterey,
11  California, and was the Loan Servicing Manager for CFI.  ERRICO created, maintained and was
12  responsible for the loan and investment records of CFI and CFMF, and directed major loan
13  servicing functions such as tracking loan balances, recording and processing receipts and
14  disbursements into and out of bank accounts, and generating account statements, payments and
15  other records sent by mail, wire and electronic transfer to CFI and CFMF investors.
16      5.      ACCUSTOM DEVELOPMENT, LLC ("ACCUSTOM") was a California limited
17  liability company controlled by NILSEN.  ACCUSTOM purportedly engaged in residential
18  construction and development, using funds borrowed from CFI and CFMF investors.
19      6.      NILSEN and ERRICO owed fiduciary, agency and other legal, statutory and
20  contractual duties of trust, loyalty, confidence and full disclosure to CFI and CFMF investors.
21
22                              The Business of CFI
23      7.      NILSEN and ERRICO took investors' money with the promise of investing it in
24  individual, or "fractional," interests in loans.  The typical loan was interest-only, for a 12 month
25  period, and was supposed to be funded by a maximum of 10 investors.  The borrowers were
26  mostly developers who sought loans for real estate projects including building custom homes.
27  During the loan period, the investors received interest payments of 12% or 13%, depending upon
28

**INDICTMENT**

1 the priority level of the loan (a loan in second priority paid a higher rate); if the loan paid off, the

2 investors' principal was returned or, at their option, rolled into a new CFI loan.

3        8.     NILSEN and ERRICO generated a standard set of investment documents that they

4 mailed to investors at the inception of their investment. Among these documents were: (a) a

5 promissory note between a borrower and CFI (which was identified as the "lender"); (b) a

6 security instrument known as a deed of trust, entered into between the borrower, CFI (as "lender"

7 and "beneficiary") and a third-party trustee, in which the borrower transferred his property, in

8 trust, to the trustee, for the benefit of CFI during the loan period; among other things, the deed of

9 trust gave the lender-beneficiary the authority to foreclose on, and sell, the property if the

10 borrower failed to perform; (c) a "Promissory Note Endorsement," in which CFI purported to

11 transfer to the investor, to the extent of the investor's percentage interest in the loan, all of CFI's

12 rights as the lender in the promissory note; (d) an "Assignment of Deed of Trust," in which CFI

13 purported to transfer to the investor, to the extent of the investor's percentage interest in the loan,

14 all of CFI's rights as the lender-beneficiary in the deed of trust; and (e) a "Lender / Purchaser

15 Disclosure Statement," which made representations about the loan, such as the loan amount, the

16 amount of senior encumbrances, the value of the property relative to the amount of loans secured

17 by it, and the borrower's sources of income and expenses. This indictment refers to these

18 documents collectively as the "Fractional Investment Documents."

19        9.     After they purportedly transferred to investors all of CFI's rights and interests as

20 lender and beneficiary in the promissory note and deed of trust, NILSEN and ERRICO

21 represented to investors that CFI would act as their loan servicing agent. CFI's loan servicing

22 duties were set forth in the "Loan Servicing Agreement." In this agreement, NILSEN and

23 ERRICO promised to investors, among other things, that CFI would "consult with and follow

24 instructions from [the investors] on non-routine collection matters," "grant [to the borrower]

25 appropriate payment deferrals, but not the maturity of the Loan unless approved by the

26 [investors]," and "promptly communicate to [the investors] any material information about

27 collection of the Loan and the source of non-borrower Loan payments."

28 **INDICTMENT**

10.     Typically, NILSEN and ERRICO caused the original deed of trust between the borrower and CFI to be recorded at the recorder's office of the county in which the property was located, thereby giving public notice of the existence of the CFI loan.  While the Lender / Purchaser Disclosure Statement and Loan Servicing Agreement represented to investors that CFI would record the assignments of the deeds of trust that it had issued to investors, NILSEN and ERRICO typically did not record the assignments, which left CFI as the lender of record despite the purported transfer of all of its interest in the loans to investors.

11.     In the event of borrower default and foreclosure, the loan with the highest priority, known as a "1st Deed of Trust" (which paid 12%) was most secure because its lenders were first in line to be paid.  Investors in a 2nd Deed of Trust (which paid 13%) would be paid from remaining proceeds, if any.

12.     NILSEN and ERRICO mailed and electronically transmitted to investors monthly interest payments and account statements reflecting the amounts paid and principal balances. Included in this mailing was a marketing insert on which CFI listed information about loans presently available for investment.

13.     In advertisements, marketing materials and through oral statements, NILSEN, ERRICO and other CFI personnel represented to investors that CFI's loans were safe and secure investments, as reflected in the following statements, among others:  (a) CFI specialized in "secured aggressive growth investing," and investments were "secured by either a 1st or 2nd Deed of Trust, just like a bank"; (b) an investment in a CFI loan was usually for 12 to 24 months; (c) CFI rarely foreclosed on properties that were the security for investors' loans, because it carefully screened its borrowers and arranged transactions to provide investors with "maximum available protection"; and (d) no investor ever lost his or her principal with CFI.

The Business of CFMF

14.     In or about 2004, NILSEN began operating CFMF, a "blind pool" of investor funds which invested alongside CFI's fractional investors in construction and development loans.

**INDICTMENT**

4

CFMF issued securities, known as "units," to its investors, based upon the amount of money they invested in the Fund. CFMF mailed or electronically transmitted to investors' accounts a fixed interest payment, usually 10.75%, and account statements reflecting the payments and account balances. CFI was the Fund's "Manager," and NILSEN, as CFI's president and sole shareholder, made the Fund's investment decisions. ERRICO, among other Fund-related duties, created and maintained records of the amount of investor funds contributed to CFMF, the amount of CFMF's investments in loans and the balances of the loans in its portfolio, and prepared and sent interest payment checks (signed by NILSEN) to Fund investors.

15.   NILSEN distributed to Fund investors an Offering Circular which contained representations about the nature of the Fund's investments, including: (a) the Fund was formed for the purpose of making or investing in loans secured by deeds of trust on real estate; (b) proceeds from the sale of units in the Fund would be used primarily to make secured loans; (c) all loan documents would name the Fund as payee and beneficiary, and Fund investments would not be held in the name of CFI or any other nominee; (d) the Fund would not make loans to the Manager or to any of its affiliates, except for financing extended as part of a sale of real estate owned as a result of foreclosure; (e) CFI would instruct borrowers to send their loan payments directly to the Fund or to CFI's trust account maintained on the Fund's behalf; and (f) the Manager was a fiduciary to the Fund's investors, was required to exercise good faith and integrity with respect to the Fund's affairs, and was prohibited from using CFMF's funds in any manner "except for the exclusive benefit" of CFMF.

16.   In advertisements, marketing materials and through oral statements, NILSEN, ERRICO and other CFI personnel represented to investors that CFMF was a safe and secure investment, as reflected in the following statements, among others: (a) CFMF's investments were secured by real property; (b) CFMF specialized in "high-yielding, real-estate secured investments"; (c) investors could "[p]ossess [their] Golden Goose" and earn a "Fistful of Dollars" by investing in CFMF; and (d) that funds invested in CFMF were the "Hardest Working Capital in the County."

**INDICTMENT**

The Scheme to Defraud

17.    In or about 2004 through 2008, NILSEN and ERRICO engaged in a scheme, plan and artifice to defraud investors, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, through three principal methods:  (A) making materially false statements, (B) omitting to disclose material facts, and (C) creating a materially deceptive and misleading scheme, plan and artifice to defraud.  Investors entrusted NILSEN and ERRICO with over $150 million, but NILSEN and ERRICO failed to invest those funds in the manner promised, and converted millions of dollars of the investors' money for their personal benefit.  The investments which were part of the scheme to defraud include, but are not limited to, the following:

| Property / Borrower | Loan Number |
|---|---|
| Pajaro / Accustom Development | 4532 |
| Hermitage / Accustom Development | 4536, 45362 |
| Belavida / Nilsen | 4632, 46326 |
| Pasadera / Nilsen | 4649, 46496 |
| Palo C. / Borrower A | 4929, 4971 |
| Via D.M. / Nilsen | 4951 |
| Lake E. / Borrower B | 5078 |
| Bay Ridge / Accustom Development | 4921, 5352 |
| Corning / Accustom Development | 5364 |
| 93 Chaparral / Accustom Development | 5365 |
| 4th and M.V. / Borrower C | 5436 |
| Monterra / Borrower D | 5578 |

18.    NILSEN and ERRICO made false and misleading statements to investors using, among other things, the Fractional Investment Documents, the Offering Circular, interest payments and account statements, marketing inserts, advertisements and other verbal communications with investors.  NILSEN and ERRICO created the false and misleading appearance that the investors' funds were invested in sound, secured real estate loans, which

**INDICTMENT**

6

1    offered high returns and safety of principal.

2        19.    In truth, as NILSEN and ERRICO knew, by in or about 2004 and increasingly

3    thereafter, most of the loans were not performing, and thus the investors' funds were not secure.

4    As borrowers increasingly failed to pay off loans, NILSEN and ERRICO, without the investors'

5    prior knowledge or consent, extended the loan maturity dates and advanced more investor funds,

6    which caused the loan balances to balloon far beyond the initial loan amounts, diluted the

7    investors' fractional interests in the loans, and increased the likelihood that they would lose some

8    or all of their principal.

9        20.    The ever-increasing loan balances required ever-increasing amounts of interest

10   payments to existing and new investors.  Unknown to existing investors, the source of a

11   substantial part of the interest that NILSEN and ERRICO caused CFI and CFMF to pay to them

12   came from new investors' funds rather than from borrowers.

13       21.    It was a part of the scheme to defraud that, among other conduct, NILSEN and

14   ERRICO:

15            (A) represented to investors that information disclosed to investors about, among

16   other things, the balances of the loans into which they placed the investors' money, the amount of

17   the senior encumbrances on those loans and the monthly debt obligations of the borrowers was

18   accurate, when in truth, NILSEN and ERRICO knew that such information was materially

19   understated;

20            (B) represented to investors that their money would be invested in loans secured

21   by deeds of trust, when in truth, NILSEN and ERRICO improperly diverted investor funds for

22   personal use;

23            (C) omitted to disclose to investors material, adverse information about the

24   financial condition of their loans, in violation of the duties of trust, loyalty, confidence and full

25   disclosure that NILSEN and ERRICO had, including, among other things, the borrowers' failure

26   to pay interest or pay off the loan, material extensions of loan maturity dates, material

27   advancements of funds and the transfer of property from the original borrower to NILSEN or

28

**INDICTMENT**

7

affiliated entities in connection with foreclosure or a deed in lieu of foreclosure;

(D) deceived investors by creating the misleading appearance through, among other things, the Fractional Investment Documents, that CFI had transferred all of its interests in promissory notes and deeds of trust to investors and assumed the role of their loan servicing agent, when in truth, NILSEN and ERRICO continued to control the loans by failing to record the investors' trust deed assignments, leaving NILSEN with the sole authority to exploit the loans for his personal benefit;

(E) deceived investors by secretly continuing to exercise control over investors' loans by, among other things, (i) subordinating (i.e., relegating to a lower priority position) those loans in favor of loans NILSEN or ACCUSTOM obtained from a third party, and (ii) selling an investor loan to a third party in return for funds that NILSEN and ERRICO diverted to purposes other than repaying the investors' principal;

(F) deceived investors by continuing to send to them, by mail and electronic transfer, regular interest payments and account statements, which lulled investors into a false sense of security by creating the appearance that the borrowers were performing their loan obligations, when in truth, as NILSEN and ERRICO knew, most loans were non-performing, the borrowers did not pay interest and the source of a material amount of the interest payments was money from other investors which NILSEN and ERRICO added to the loan balance under the guise of an "interest reserve";

(G) misrepresented to CFMF investors that their money would be used to make or invest in loans secured by deeds of trust, when in truth, as NILSEN and ERRICO knew, a material amount of money disbursed by the Fund for loans was not so secured;

(H) misrepresented to CFMF investors that the Fund would not loan money to the Manager (CFI) or its affiliates such as NILSEN or ACCUSTOM, when in truth, as NILSEN and ERRICO knew, the Fund loaned multiple millions of dollars to the Manager and its affiliates;

(I) misrepresented to CFMF investors that the Manager would instruct borrowers to send loan payments directly to CFMF or to a CFI trust account maintained on the Fund's

**INDICTMENT**

8

1  behalf, when in truth, as NILSEN and ERRICO knew, they did not so instruct borrowers but paid

2  interest from the fictitious "interest reserves"; most borrowers did not pay any interest, and

3  NILSEN and ERRICO financed continuing interest obligations using new investor money;

4         (J) misrepresented to CFMF investors that the Fund's investments would be held

5  in loan documents made in the Fund's name, when in truth, as NILSEN and ERRICO knew, the

6  promissory notes and deeds of trust in which NILSEN and ERRICO placed CFMF's money did

7  not reflect the Fund as lender, nor did the Fund receive assignments reflecting its investments;

8         (K) represented to CFMF investors that the Manager was a fiduciary to the Fund's

9  investors, was required to exercise good faith and integrity with respect to the Fund's affairs, and

10 was prohibited from using CFMF's funds in any manner "except for the exclusive benefit" of

11 CFMF, when in truth, as NILSEN and ERRICO knew, the Manager, through its president and

12 sole shareholder, NILSEN, and its loan servicing manager ERRICO, repeatedly breached its

13 duties to investors;

14        (L) concealed their misconduct by providing false information to outside auditors

15 who audited CFMF's financial statements and reviewed trust accounts in connection with state

16 regulatory requirements of the Department of Corporations and Department of Real Estate;

17        (M) concealed their misconduct by belatedly recording many of the assignments

18 of deeds of trust that NILSEN and ERRICO had previously issued to investors, but had not

19 recorded, and by executing quitclaim deeds to investors on certain properties;

20        (N) held investor meetings at which, among other things, NILSEN lulled investors

21 by making materially false statements, omitting to disclose material information and making

22 statements that were materially misleading and deceptive; and

23        (O) defrauded investors of multiple millions of dollars used for personal financial

24 benefit by, among other things, charging loan origination fees, extension fees, modification fees,

25 late fees, management fees, servicing fees, paying themselves commissions and consulting fees,

26 using investor funds for loans to themselves on which they rarely paid interest, converting

27 borrowers' properties into the name of NILSEN or ACCUSTOM, and otherwise

28 **INDICTMENT**

1    misappropriating investor funds for personal use.

2        22.    By May 2008, as a result of their fraudulent scheme, NILSEN and ERRICO had

3    created a loan portfolio of more than 150 loans in which they had placed over $150 million of

4    investor money.  Over 1,000 people had invested in CFI, CFMF or both.

5        23.    By June 2008, CFI and CFMF were in bankruptcy proceedings.  The precise

6    amount of the loss to investors caused by the scheme depends upon the value of the properties

7    that served as the security for the loans and the amount of equity, if any, left in those properties,

8    but will exceed $100 million.

9

10   COUNT ONE:  18 U.S.C. § 1349 (Conspiracy to Commit Mail and Wire Fraud)

11       24.    Paragraphs 1 through 23 are realleged as if fully set forth herein.

12       25.    From in or about 2004 through in or about 2008, in the Northern District of

13   California and elsewhere, the defendants,

14                        DAVID ARTHUR NILSEN, and
                          MANOEL ANTONIO ERRICO,

15   and others known and unknown to the Grand Jury, did conspire and agree together and with each

16   other to commit offenses against the United States, to wit, (a) mail fraud, in violation of Title 18,

17   United States Code, Section 1349, and Title 18, United States Code, Section 1341, and (b) wire

18   fraud, in violation of Title 18, United States Code, Section 1349, and Title 18, United States

19   Code, Section 1343.

20                              Objects of the Conspiracy

21       26.    Mail Fraud: it was a part and object of the conspiracy that DAVID ARTHUR

22   NILSEN and MANOEL ANTONIO ERRICO, having devised and intending to devise a scheme

23   and artifice to defraud, and for obtaining money and property by means of false and fraudulent

24   pretenses, representations, and promises, and to sell, dispose of, loan, exchange, alter, give away,

25   distribute, supply, and furnish and procure for unlawful use any counterfeit or spurious coin,

26   obligation, security, or other article, or anything represented to be or intimated or held out to be

27

28   **INDICTMENT**

                                          10

1  such counterfeit or spurious article, for the purpose of executing such scheme and artifice and

2  attempting so to do, placed in the post office and authorized depository for mail matter, matters

3  and things to be sent and delivered by the Postal Service, and deposited and caused to be

4  deposited matters and things to be sent and delivered by private or commercial interstate carrier,

5  and took and received therefrom, such matters and things, and knowingly caused to be delivered

6  by mail and such carrier according to the direction thereon, and at the place at which it is directed

7  to be delivered by the person to whom it is addressed, such matters and things, in violation of

8  Title 18, United States Code, Section 1341; and

9        27.   <u>Wire Fraud</u>:  it was further a part and object of the conspiracy that DAVID

10  ARTHUR NILSEN and MANOEL ANTONIO ERRICO, having devised and intending to devise

11  a scheme and artifice to defraud, and for obtaining money and property by means of false or

12  fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by

13  means of wire, radio, and television communication in interstate or foreign commerce, writings,

14  signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice, in

15  violation of Title 18, United States Code, Section 1343.

16  The Means and Methods of the Conspiracy

17        28.   Among the means and methods by which NILSEN and ERRICO carried out the

18  conspiracy to defraud investors were the following:

19        (A) mailing and otherwise delivering to investors the Fractional Investment

20  Documents, Offering Circular and other documents which contained materially false

21  information;

22        (B) transmitting, and causing to be transmitted, wire transfers diverting investor

23  funds for personal use;

24        (C) executing documents, in breach of the duties of trust, loyalty, confidence and

25  full disclosure that NILSEN and ERRICO had, to extend loan maturity dates, fund

26  advancements, effect property transfers from borrowers to NILSEN and ACCUSTOM,

27  subordinate investor loans and assign investor loans to third parties, all without prior knowledge

28  **INDICTMENT**

11

1    or consent of investors;

2    (D) executing deceptive and misleading trust deed assignments, promissory note

3    endorsements and Loan Servicing Agreements, which created the appearance that CFI had

4    transferred all of its interests in promissory notes and deeds of trust to investors and assumed the

5    role of their loan servicing agent;

6    (E) mailing and electronically transferring to investors deceptive and misleading

7    interest payments and account statements, which created the appearance that their investments

8    were performing and their principal was safe;

9    (F) transferring CFMF money into loans without securing the Fund's interest in

10   the loans through deeds of trust in its name or the receipt of assignments of same;

11   (G) loaning funds to the Fund's Manager and its affiliates in violation of the

12   Offering Circular;

13   (H) paying interest to CFMF and CFI investors from purported "interest reserves,"

14   which were funded in material part by new investor money;

15   (I) providing false financial information to auditors;

16   (J) belatedly recording assignments of deeds of trust and executing quitclaim

17   deeds to investors on certain properties;

18   (K) making, at investor meetings, materially false statements, omitting to disclose

19   material information and making statements that were materially misleading and deceptive; and

20   (L) paying themselves multiple millions of dollars through various forms of

21   compensation.

22   <u>Overt Acts of the Conspiracy</u>

23   29.    In furtherance of the conspiracy and to effect the illegal object thereof, NILSEN

24   and ERRICO committed and caused others to commit the following overt acts, among others, in

25   the Northern District of California and elsewhere:

26   (A)    In or about December 2004, mailed an interest payment and account

27   statement to Investor A for loan numbers 4532 and 4649;

28

**INDICTMENT**

(B)     In or about December 2004, mailed an interest payment and account statement to Investor B for loan number 4649;

(C)     In or about September 20, 2005, caused an interstate wire transfer of $1,500,000 to be made from CFMF Funding / Subscription Account -8146;

(D)     In or about November 15, 2005, caused an interstate wire transfer of $250,000 to be made from CFMF Funding / Subscription Account -8146;

(E)     In or about December 2005, mailed an interest payment and account statement to Investor C for loan numbers 4951 and 5078;

(F)     In or about December 2005, mailed an interest payment and account statement to Investor D for loan number 5078;

(G)     In or about December 2005, transferred an interest payment for loan number 4971 to Investor E's CFMF account and mailed to Investor E an account statement;

(H)     In or about December 2005, mailed an interest payment and account statement to Investor H for loan number 45362;

(I)     In or about June 2006, mailed an interest payment and account statement to Investor D for loan number 5078;

(J)     In or about December 2006, transferred an interest payment and mailed an account statement to Investor D for loan numbers 5078, 5352;

(K)     In or about December 2006, executed a Subordination Agreement in connection with loan number 5364;

(L)     In or about February 7, 2007, caused an interstate wire transfer of $51,241.95 to be made from Escrow Trust Account -5146;

(M)     In or about May 15, 2007, caused an interstate wire transfer of $100,000 to be made from Escrow Trust Account -6023;

(N)     In or about June 2007, mailed an interest payment and account statement to Investor B for loan numbers 4632 and 4649;

(O)     In or about June 2007, transferred an interest payment and mailed an

**INDICTMENT**

1 account statement to Investor D for loan numbers 5078, 5352;

2         (P)    In or about July 9, 2007, caused an interstate wire transfer of $209,100 to

3 be made from Escrow Trust Account -6023;

4         (Q)    In or about October 2007, executed an assignment of the deed of trust to a

5 third party for loan number 5436;

6         (R)    In or about November 19, 2007, caused an interstate wire transfer of

7 $28,490 to be made from Escrow Trust Account -6023;

8         (S)    In or about November 19, 2007, caused an interstate wire transfer of

9 $28,190 to be made from Escrow Trust Account -6023;

10         (T)    In or about November 19, 2007, caused an interstate wire transfer of

11 $27,690 to be made from Escrow Trust Account -6023.

12         (U)    In or about December 2007, mailed an interest payment and account

13 statement to Investor A for loan numbers 4532, 4649, 4971, 5364 and 5365;

14         (V)    In or about December 2007, transferred an interest payment and mailed an

15 account statement to Investor D for loan numbers 5078, 5352;

16         (W)    In or about December 2007, transferred an interest payment for loan

17 number 4971 to Investor E's CFMF account and mailed to Investor E an account statement;

18         (X)    In or about January 2008, mailed investment documents to Investor B for

19 loan number 5578;

20         (Y)    In or about January 2008, transferred an interest payment and mailed an

21 account statement to Investor C for loan numbers 4951, 5078 and 5436;

22         (Z)    In or about January 2008, transferred an interest payment and mailed an

23 account statement to Investor D for loan numbers 5078, 5352;

24         (AA)    In or about January 2008, mailed an interest payment and account

25 statement to Investor H for loan number 45362;

26         (BB)    In or about February 2008, transferred an interest payment and mailed an

27 account statement to Investor B for loan numbers 4632, 4649, 5436, 5578;

28

**INDICTMENT**

(CC)   In or about February 2008, transferred an interest payment and mailed an account statement to Investor D for loan numbers 5078, 5352;

(DD)   In or about March 2008, transferred an interest payment and mailed an account statement to Investor B for loan numbers 4632, 4649, 5436, 5578; and

(EE)   In or about March 2008, transferred an interest payment and mailed an account statement to Investor D for loan numbers 5078, 5352, 5436.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO THROUGH TWELVE:  18 U.S.C. § 1341 (Mail Fraud)

30.    Paragraphs 1 through 23 and 28 through 29 are realleged as if fully set forth herein.

31.    On or about the dates set forth below, in the Northern District of California and elsewhere, the defendants,

DAVID ARTHUR NILSEN, and
MANOEL ANTONIO ERRICO,

and others known and unknown to the Grand Jury, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to sell, dispose of, loan, exchange, alter, give away, distribute, supply, and furnish and procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme and artifice and attempting so to do, placed in the post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and deposited and caused to be deposited matters and things to be sent and delivered by private or commercial interstate carrier, and took and received therefrom, such matters and things, and knowingly caused to be delivered by mail and such carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, such matters and things, in violation of Title 18, United States Code, Section 1341, to wit:

**INDICTMENT**

15

| Count | Approximate Mailing Date | Description | Investor | Loan #s |
|-------|--------------------------|-------------|----------|---------|
| Two | January 2008 | investor packet | B | 5578 |
| Three | February 2008 | interest payment transfer and mailed statement | B | 4632, 4649, 5436, 5578 |
| Four | March 2008 | interest payment transfer and mailed statement | B | 4632, 4649, 5436, 5578 |
| Five | December 2005 | interest payment and statement | D | 5078 |
| Six | June 2006 | interest payment and statement | D | 5078 |
| Seven | December 2006 | interest payment transfer and mailed statement | D | 5078, 5352 |
| Eight | June 2007 | interest payment transfer and mailed statement | D | 5078, 5352 |
| Nine | December 2007 | interest payment transfer and mailed statement | D | 5078, 5352 |
| Ten | January 2008 | interest payment transfer and mailed statement | D | 5078, 5352 |
| Eleven | February 2008 | interest payment transfer and mailed statement | D | 5078, 5352 |
| Twelve | March 2008 | interest payment transfer and mailed statement | D | 5078, 5352, 5436 |

COUNTS THIRTEEN THROUGH TWENTY:  18 U.S.C. § 1343 (Wire Fraud)

32.    Paragraphs 1 through 23 and 28 through 29 are realleged as if fully set forth herein.

33.    On or about the dates set forth below, in the Northern District of California and elsewhere, the defendants,

DAVID ARTHUR NILSEN, and
MANOEL ANTONIO ERRICO,

and others known and unknown to the Grand Jury, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false or

**INDICTMENT**

16

fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice, in violation of Title 18, United States Code, Section 1343, to wit:

| Count | Wire Date | Amount | Description |
|---|---|---|---|
| Thirteen | September 20, 2005 | $1,500,000 | interstate wire transfer from CFMF Funding / Subscription Account -8146 for an investment in Arizona real estate |
| Fourteen | November 15, 2005 | $250,000 | interstate wire transfer from CFMF Funding / Subscription Account -8146 for the benefit of a family member |
| Fifteen | February 9, 2007 | $51,241.95 | interstate wire transfer from Escrow Trust Account -5146 for an Arizona residence |
| Sixteen | May 15, 2007 | $100,000 | interstate wire transfer from Escrow Trust Account -6023 for a deposit on property in Puerto Vallarta, Mexico |
| Seventeen | July 9, 2007 | $209,100 | interstate and foreign wire transfer from Escrow Trust Account -6023 for a deposit on property in Puerto Vallarta, Mexico |
| Eighteen | November 19, 2007 | $28,490 | interstate and foreign wire transfer from Escrow Trust Account -6023 for a deposit on property in Puerto Vallarta, Mexico |
| Nineteen | November 19, 2007 | $28,190 | interstate and foreign wire transfer from Escrow Trust Account -6023 for a deposit on property in Puerto Vallarta, Mexico |
| Twenty | November 19, 2007 | $27,690 | interstate and foreign wire transfer from Escrow Trust Account -6023 for a deposit on property in Puerto Vallarta, Mexico |

COUNTS TWENTY-ONE THROUGH THIRTY-ONE:  15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. §§ 240.10b-5 and 240.10b5-2; 18 U.S.C. § 2 (Securities Fraud)

34.     Paragraphs 1 through 23 and 28 through 29 are realleged as if fully set forth herein.

35.     On or about the dates set forth below, in the Northern District of California and elsewhere, the defendants,

DAVID ARTHUR NILSEN, and

**INDICTMENT**

17

MANOEL ANTONIO ERRICO,

willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of

interstate commerce, the mails and the facilities of national securities exchanges, in connection

with the purchase and sale of securities, did use and employ manipulative and deceptive devices

and contrivances, and aided and abetted others in using and employing manipulative and

deceptive devices and contrivances, in contravention of Title 15, United States Code, Sections

78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2,

and Title 18, United States Code, Section 2, by (a) employing devices, schemes and artifices to

defraud; (b) making untrue statements of material facts and omitting to state material facts

necessary in order to make the statements made, in the light of the circumstances under which

they were made, not misleading; and (c) engaging in acts, practices and courses of business

which operated and would operate as a fraud and deceit upon persons, to wit, used and caused

others to use the mails in the manner, and on or about the dates, set forth below:

| Count | Approximate Mailing Date | Description |
| --- | --- | --- |
| Twenty-One | August 2005 | $7,720 CFMF investment by Investor E |
| Twenty-Two | August 2005 | $106,000 CFMF investment by Investor H |
| Twenty-Three | October 2005 | $7,000 CFMF investment by Investor E |
| Twenty-Four | April 2007 | $13,700 CFMF investment by Investor E |
| Twenty-Five | August 2007 | account statement for $95,000 CFMF investment by Investor F |
| Twenty-Six | August 2007 | $17,000 CFMF investment by Investor F |
| Twenty-Seven | October 2007 | $20,000 CFMF investment by Investor B |
| Twenty-Eight | October 2007 | account statement for $225,000 CFMF investment by Investor G |

**INDICTMENT**

18

| Twenty-Nine | December 2007 | $1,685 CFMF investment by Investor B |
| Thirty | December 2007 | $130,000 CFMF investment by Investor F |
| Thirty-One | March 2008 | $10,000 CFMF investment by Investor F |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c) (Forfeiture)

36.     Paragraphs 1 through 35 are realleged as if fully set forth herein.

37.     Upon a conviction of any of the offenses alleged in Counts One through Thirty-One, the defendants,

DAVID ARTHUR NILSEN, and
MANOEL ANTONIO ERRICO,

shall forfeit to the United States all property, constituting and derived from proceeds traceable to violations of Title 18, United States Code, Section 1341 (Mail Fraud), Title 18, United States Code, Section 1343 (Wire Fraud), Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and  Title 18, United States Code, Sections 2 and 1349, as alleged in Counts One through Thirty-One of this Indictment.

38.     If any of the forfeitable property, as a result of any act or omission of NILSEN or ERRICO:

(A)     cannot be located upon the exercise of due diligence;

(B)     has been transferred or sold to, or deposited with, a third party;

(C)     has been placed beyond the jurisdiction of the Court;

(D)     has been substantially diminished in value; or

(E)     has been commingled with other property which cannot be divided without

**INDICTMENT**

19

difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of said defendants up to the value of the forfeitable property

described above.

All in violation of Title 18, United States Code, Section 1341 (Mail Fraud), Title 18,

United States Code, Section 1343 (Wire Fraud), Title 15, United States Code, Section 78j(b) and

78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; Title 18, United

States Code, Sections 2, 1349 and 981(a)(1)(C); Title 21, United States Code, Section 853(p);

and Title 28, United States Code, Section 2461(c).

DATED:  September 8, 2009

A TRUE BILL

_____
FOREPERSON

JOSEPH P. RUSSONIELLO
United States Attorney

_____
BRIAN J. STRETCH
Chief, Criminal Division

Approved as to form:

_____
THOMAS E. STEVENS
Assistant United States Attorney

**INDICTMENT**

20

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

*FILED*

SEP ~ 8 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

### OFFENSE CHARGED

VIOLATION: COUNT 1: 18 U.S.C. § 1349 (Conspiracy);
COUNTS 2 -12: 18 U.S.C. § 1341 (Mail Fraud);
COUNTS 13-20: 18 U.S.C. § 1343 (Wire Fraud);
COUNTS 21-31: 15 U.S.C. § § 78j(b) and 78ff; 17 C.F.R §§
240.10b-5 and 240.10b5-2 (Securities Fraud); 18 U.S.C. § 2
(Aiding and Abetting)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:     SEE ATTACHMENT

*SEALED BY COURT ORDER*

### DEFENDANT - U.S

► DAVID ARTHUR NILSEN and MANOEL ANTONIO ERRICO

DISTRICT COURT NUMBER

**CR09        0895**   *JW*

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ►   *PVT*

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction        } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer    ☐ Yes    } If "Yes"
been filed?     ☐ No         give date
filed

DATE OF
ARREST            Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED
TO U.S. CUSTODY ►        Month/Day/Year

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

**UNITED STATES POSTAL INSPECTION SERVICE**

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:                                          SHOW
DOCKET NO.
☐ U.S. ATTORNEY  ☐ DEFENSE  }

☐ this prosecution relates to a
pending case involving this same
defendant                                MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this  }
defendant were recorded under

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   THOMAS STEVENS

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS   ☐ NO PROCESS*   ☒ WARRANT        Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

*\* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment*

Date/Time:                         Before Judge:

Comments:

## ATTACHMENT

**Count One**:  18 U.S.C. § 1349 (Conspiracy)

> **Maximum Penalties**:  Twenty (20) years imprisonment; fine $250,000 or twice the amount of gain or loss, whichever is greater; supervised release three (3) years; special assessment $100.

**Counts Two through Twelve**:  18 U.S.C. § 1341 (Mail Fraud)

> **Maximum Penalties**:  Twenty (20) years imprisonment; fine $250,000 or twice the amount of gain or loss, whichever is greater; supervised release three (3) years; special assessment $100.

**Counts Thirteen through Twenty**:  18 U.S.C. § 1343 (Wire Fraud)

> **Maximum Penalties**:  Twenty (20) years imprisonment; fine $250,000 or twice the amount of gain or loss, whichever is greater; supervised release three (3) years; special assessment $100.

**Counts Twenty-One through Thirty-One**:  15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5 and 240.10b5-2 (Securities Fraud),18 U.S.C. § 2 (Aiding and Abetting)

> **Maximum Penalties**:  Twenty (20) years imprisonment; fine $5,000,000 or twice the amount of gain or loss, whichever is greater; supervised release three (3) years; special assessment $100.


**Counts One through Thirty-One include a Forfeiture Allegation
18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) (Forfeiture)**