BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6830
    Fax: (415) 436-7234
    E-mail: Kyle.Waldinger@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 09-0895 EXE (EJD) |
| Plaintiff, | UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION FOR DETENTION |
| v. | Hearing date: September 1, 2016 |
| MANOEL ANTONIO ERRICO, | Hearing time: 1:30 p.m. |
| Defendant. | Court: Hon. Howard R. Lloyd |

A detention hearing is scheduled for the defendant Manoel Antonio Errico for Thursday, September 1, 2016, at 1:30 p.m. In anticipation of that hearing, the United States files this memorandum to provide additional support for this Court's conclusion that Errico should be detained pending trial, based on the finding that he is a flight risk.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Indictment and the Crimes Charged Against Errico

On September 8, 2009, a grand jury returned an Indictment against the defendants David Arthur Nilsen and Manoel Antonio Errico. The case was assigned to the Honorable James Ware. After Judge Ware's retirement, the case was re-assigned to the Honorable Edward J. Davila.

USA'S MEMO. RE DETENTION HEARING
CR 09-0895 EXE (EJD)

The Indictment pertains to a real estate investment fraud scheme that the defendants operated until about May 2008. The defendant Nilsen was the president and sole shareholder of Cedar Funding, Inc. ("CFI"), a Monterey-based "hard money" lender. Nilsen was also the investment manager of an investment fund known as Cedar Funding Mortgage Fund ("CFMF"). CFI and CFMF offered investors the opportunity to fund construction and real estate development loans. The investors were told that their investments were secured by deeds of trust on the properties that were the subject of the loans.

The defendant Errico was the loan servicing manager for the Cedar Funding entities. He tracked incoming and outgoing funds, paid interest to investors and, with Nilsen, was the principal repository of knowledge about the performance of the loan portfolio.

There were more than 1,000 investors in the Cedar Funding entities. Contrary to documents provided to investors, Nilsen and Errico maintained CFI's/CFMF's effective control over the loans funded by investors by, among other methods, failing to record in the chain of title the investors' interests securing their loans. (Investors were supposed to be listed on deeds of trust as fractional lienholders.) This control enabled Nilsen and Errico to mask the non-performance of borrowers on many loans, through such measures as advancing more funds into over-advanced loans (thereby diluting the investors' equity and imperiling their principal). Nilsen, with Errico's knowledge, also diverted investor funds for personal expenses such as vacation condominiums. Lacking borrower payments to meet interest obligations to its investors, Nilsen and Errico diverted new investor money to pay interest to existing investors, in a classic Ponzi scheme. The effect of these interest payments was to lull investors into believing that their investments were secure and performing, when the opposite was true.

The Indictment charged Nilsen and Errico with the following: (1) Count One – Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. § 1349; (2) Counts Two through Twelve – Mail Fraud, in violation of 18 U.S.C. § 1341; (3) Counts Thirteen through Twenty – Wire Fraud, in violation of 18 U.S.C. § 1343; and (4) Counts Twenty-One through Thirty-One, Securities Fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. §§ 240.10b-5 and 240.10b-5-2.

**B.  Proceedings to Date**

As set forth in more detail below, prior to the return of the Indictment, the defendant Errico left the United States in approximately June 2009 and returned to his native country of Brazil, which does

not extradite its citizens. Accordingly, the only defendant brought before the court after the return of the Indictment in September 2009 was the defendant Nilsen. Nilsen pleaded guilty to Count One of the Indictment on October 24, 2011. On April 2, 2012, Judge Davila sentenced Nilsen to a 97-month term of imprisonment. Nilsen remains in custody today.

In April 2016, the United States was informed that the defendant Errico had been detained by Argentine authorities at the "Tancredo Neves" port of entry in the province of Misiones, pursuant to an Interpol "Red Notice" that had been submitted by the United States. The United States thereafter submitted a formal extradition request to the Argentine authorities in early June 2016. On or about July 1, 2016, the Argentine federal court of El Dorado, in the Province of Misiones, agreed to the abridged extradition of Errico to the United States. On August 1, 2016, the Argentine Ministry of Foreign Affairs granted the United States' request for Errico's extradition. FBI agents retrieved Errico from officials in Argentina on or about August 22, 2016, arriving back in the United States on August 23, 2016. Errico made his initial appearance before the Honorable Nathanael Cousins that day.

## II.   LEGAL STANDARD

### A.   "Preponderance of the Evidence" Standard for Flight Risk

The Bail Reform Act permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

### B.   Statutory Factors Requiring Detention

The Ninth Circuit has identified several relevant statutory factors in determining whether pretrial detention is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C.

§ 3142(g); *United States v. Winsor*, 785 F.2d 755 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1407.

## III.  ARGUMENT

The facts of this case establish that the defendant Manoel Errico is a flight risk pursuant to the statutory factors contained in 18 U.S.C. § 3142(g).  Some of these facts are set out below.  The United States reserves the right to present additional facts at the hearing on September 1, 2016.

### A.  Nature and Circumstances of the Offenses Charged (18 U.S.C. § 3142(g)(1))

This factor weighs in favor of detention.  In essence, the Indictment alleges that Errico engaged in the operation of a Ponzi scheme for several years.  According to the restitution judgment entered in the co-defendant Nilsen's case, this scheme caused loss to hundreds of investors totaling more than $69 million, representing one of the largest investment fraud schemes prosecuted in this District.

The serious nature of the offenses with which Errico is charged is reflected in the sentence received by his co-defendant, David Nilsen.  In April 2012, Judge Davila sentenced Nilsen to serve a 97-month sentence of imprisonment.  Errico left the United States many years ago – in June 2009.  Yet the serious nature of the charges offenses means that his co-defendant remains in custody today, with a release date of June 2018.  Although Errico likely has less culpability based on his role in the offenses, he still likely faces a significant sentence if convicted.  This gives him a great incentive to flee.

### B.  Weight of the Evidence Against Defendant (18 U.S.C. § 3142(g)(2))

The investigation has directly linked Errico to the operation of the scheme.  Specifically, Cedar Funding witnesses have told investigators that Errico knew the true financial condition of each of the loans in which investors had made investments and that Errico was aware of the negative loan balances and the misuse of funds (*i.e.*, the payment of interest to existing investors by using funds from new investors, rather than from loan proceeds).

At the sentencing of the co-defendant Nilsen, several investor-victims spoke.  It is significant that, even though the relevant event was *Nilsen's* sentencing, two of the victims mentioned the defendant *Errico*, which supports the conclusion that his role was significant and that he had direct contact with investors.[1]

---

[1] Specifically, the investor John Callahan noted that "right before the ship sank" in March 2008 he was "dealing with Manoel Errico." Mr. Callahan noted that he started to become suspicious and

USA'S MEMO. RE DETENTION HEARING
CR 09-0895 EXE (EJD)                4

Finally, Errico's departure from the United States and his failure thereafter to return to the United States after learning of the Indictment (detailed in the next section) reflect his consciousness of guilt, which contributes to the weight of the evidence against him.

**C.    Defendant's History and Characteristics (18 U.S.C. § 3142(g)(3)(A))**

In short, Errico has strong ties to Brazil and his ties to this District have become attenuated. Errico was born in and is a citizen of Brazil. Although the United States does have an extradition treaty with Brazil, in practice Brazil does not extradite its own citizens to the United States.

Although Errico lived in the United States for many years, he has not lived here since mid-2009, when he left during the government's investigation of Cedar Funding. His ties to this District are therefore attenuated. Indeed, although Errico is a naturalized United States citizen, it appears that he obtained U.S. citizenship only in May 2009 – a month or so before he left the United States.

In addition to this criminal prosecution, there are other disincentives to Errico staying in the United States. Specifically, the area where Errico has the most ties (the Monterey area) is the one place he is least welcome because of the hundreds of people there that are alleged to be his victims.

Perhaps more important than Errico's ties to Brazil and his attenuated ties to the United States is the fact that Errico appears to have fled in the face of impending prosecution. Cedar Funding seized operations in about May 2008. Shortly thereafter, Errico became aware of the United States' investigation because, for example, he was interviewed in August 2008 at the Monterey County District Attorney's Office by a U.S. Postal Inspector, a DA investigator, an AUSA, and an ADA. Errico later retained counsel at Berliner Cohen. In or about June 2009, Errico simply left the United States and went to Brazil. Despite the fact that he had been in contact with the government through his counsel, he did not inform the government of his impending departure. Once in Brazil, Errico had some email and telephone contact with Postal Inspector Jason Crowe in June, July, August, and September 2009. In a

---

made contact with Errico to try to get some of his money back, but got no response. *See* doc. 84, at 4-5. Another investor, Michelle Long, noted that she had asked "David and Manoel to choose the property for me [to invest in]" because she was unable to do so after she became ill. Ms. Long told Judge Davila that Nilsen and Errico "were fully aware I was invested due to illness and I was reassured of the safety of my short-term real estate investment." *Id.* at 15. The government notes, however, that at least one other investor (Craig Dorner) told Judge Davila that Nilsen "alone served as a responsible person in the scheme." *Id.* at 13

USA'S MEMO. RE DETENTION HEARING
CR 09-0895 EXE (EJD)                           5

short (approximately 5 minute) telephone call on July 10, 2009, Errico told Inspector Crowe that he went to Brazil because his house was being foreclosed, he lost his job, and he needed to make money. In an email that he sent to Errico in August 2009, Inspector Crowe indicated that the United States would consider Errico's prompt and voluntary return to the United States to be a form of cooperation.

Errico learned about the return of the Indictment in September 2009, and he contacted Inspector Crowe about it on September 12, 2009. In a series of telephone conversations that day, Inspector Crowe confirmed to Errico that he had been indicted and that there was a warrant for his arrest. Inspector Crowe advised Errico that, if he did not return to the United States voluntarily, the government would pursue means to secure his return. (Errico denied leaving the United States because of the criminal investigation, but rather because of financial considerations. Thus, Errico stated, even if he returned to the United States, he would have no means to support himself.) In the third and last telephone conversation that day, Errico told Inspector Crowe that he had discussed the matter with his wife and that they had decided that they needed to return to the United States as soon as practical. Errico agreed to speak with Inspector Crowe again by September 16, 2009.

On September 16, 2009, Inspector Crowe received an email from Errico informing Inspector Crowe that he should be hearing from his counselor "at any time now." After that, however, it was essentially the proverbial radio silence.

## IV. CONCLUSION

For the above stated reasons and subject to additional argument at the hearing on September 1, 2016, the Government respectfully requests that this Court find that Manoel Errico is a flight risk, and order him detained pending trial.

DATED: August 29, 2016

Respectfully submitted,

BRIAN J. STRETCH,
United States Attorney

/s/
_____
KYLE F. WALDINGER
Assistant United States Attorney